UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY LONERGAN, JESSICA FOARD

                Plaintiffs,

-v-

THE CITY OF NEW YORK, WILLIAM BRATTON, Commissioner of the New York City Police Department, in his official capacity,

                Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

CV 14 - 1870

AMON, CH.J.

REYES, M.J

    MARY LONERGAN and JESSICA FOARD, by their attorneys BEENA AHMAD and REBECCA HEINEGG, as and for their complaint, do hereby state and allege:

### PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiffs' rights under the First and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983.

2. Plaintiffs MARY LONERGAN and JESSICA FOARD seek a declaratory judgment declaring the New York City Administrative Code sections 10-108(g), 24-233, and 24-237 an unconstitutional restriction of First Amendment freedoms insofar as, taken together, they impose a blanket ban on amplified sound on moving vehicles, but carve out a content-based exception for certain vehicles vending food items. Plaintiffs also seek injunctive relief enjoining the New York City Police Department to issue plaintiffs a moving sound permit for their May Day march on April 26, 2014, and an award of attorney's fees.

1

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the First and Fourteenth Amendments of the Constitution of the United States.

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

5. Venue is proper pursuant to 28 U.S.C. §1391(b) in that plaintiffs' claims arose in the Eastern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

7. Plaintiff MARY LONERGAN is a school teacher and a member of the Revolutionary Communist Progressive Labor Party ("PLP"). The PLP is a political organization dedicated to working collectively to build a worker-run society, and organizing workers, soldiers and youth into a revolutionary movement for communism.

8. Plaintiff JESSICA FOARD is a school teacher and a member of the PLP.

9. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

10. Defendant WILLIAM BRATTON is the Commissioner of the New York City Police Department ("NYPD"). He is sued in his official capacity.

## **STATUTORY PROVISIONS**

11. New York City Administrative Code section 10-108 governs the use of amplified sound in New York City.

12. Subsection (d) of section 10-108 states that it is "unlawful for any person to use or operate any sound device or apparatus in, on, near or adjacent to any public street, park or place, unless such person shall have first obtained a permit to be issued by the police commissioner."

13. Subsection (f) of section 10-108 governs the issuance of permits for amplified sound, and provides that:

> The police commissioner shall not deny a permit for any specific time, location or use, to any applicant who complies with the provisions of this section, except for one or more of the reasons specified in subdivision g hereof or for non-payment of the fee prescribed in subdivision h hereof, or to prevent overlapping in the granting of permits.

14. Subsection 10-108(g)(4) of the Administrative Code provides that "[t]he police commissioner shall not issue any permit for the use of a sound device or apparatus... In or on any vehicle or other device while it is in transit."

15. A violation of any provision of section 10-108 is punishable by a fine of up to $100, up to thirty days in jail, or both. NYC Administrative Code 10-108(j).

16. Additionally, the New York City "Noise Code" also arbitrarily restricts plaintiffs' use of amplified sound on a moving vehicle. NYC Administrative code section 24-233 (b)(2) prohibits the use of "a personal audio device from on or inside a motor vehicle, whether moving, parked, stopped or standing, on or in any public right of way so that sound emanating from such device is plainly audible to another individual at a distance of 25 feet or more from the source." A personal audio device includes, "a sound reproduction device

installed in or operated from a motor vehicle whether or not portable." NYC Administrative Code §24-203(43). "Sound reproduction device" is defined as "a device intended primarily for the production or reproduction of sound, including but not limited to any musical instrument, radio receiver, television receiver, tape recorder, phonograph or electronic sound amplifying system." NYC Administrative Code §24-203(49)

17. However, Section 24-237(d) provides an exception for "sound signal devices" "attached to, on or in a motor vehicle, wagon or manually propelled cart from which food or any other items are sold or offered for sale." A sound signal means "any sound produced by a sound signal device designed to transmit information." NYC Administrative Code § 24-203(55). Under Section 24-237, motor vehicles from which food or any other items are sold or offered for sale are permitted the use of sound signal devices so long as they remain in motion.

18. The authority to enforce the provisions of the "Noise Code" remain reserved to the NYPD, as well as other city agencies including the department of environmental protection. These powers include the ability to issue summonses, appearance tickets, and notices of violation for violations of the code.

## STATEMENT OF FACTS

19. For approximately 40 years, members of the Revolutionary Communist Progressive Labor Party ("PLP") have held an annual march to celebrate May Day, the international worker's holiday. A march is central to the group's message of solidarity with the labor movement. This parade has taken place primarily in Brooklyn, New York. The May Day march is

diverse and multicultural, draws hundreds of people, including many families with children, and proceeds with chants and music. It can span several city blocks.

20. Plaintiff MARY LONERGAN has been among the primary organizers of the PLP's May Day parade for over ten years.

21. Plaintiff JESSICA FOARD has been among the primary organizers of the PLP's May Day parade for two years.

22. For two years, plaintiff JESSICA FOARD has applied for a parade permit for the PLP's annual May Day march from the NYPD's 70th precinct, and has requested that a permit also be granted for amplified sound for the length of the parade.

23. Plaintiffs seek to use a sound truck so that the march can maintain a cohesive message, and in order to provide an effective means of communicating with the hundreds of participants. The march consists of political songs and chants, and in years past, the organizers have found themselves struggling to maintain a uniform chant or song from the front of the march to those at the end.

24. The march is planned to begin at the northwest corner of Parkside Avenue and Ocean Avenue in Kings County, New York, proceed northeast on Parkside Avenue, turn and proceed southeast on Flatbush Avenue and end at the intersection of Flatbush Avenue and Nostrand Avenue.

25. The march route travels through a busy and noisy commercial area in Brooklyn, New York.

26. In the past two years, the commissioner of the NYPD, through his agent, Detective Dominick Scotto of the NYPD's 70th precinct, has denied the request for an amplified sound permit, stating that there is "no such thing" as a moving sound permit.

27. Detective Scotto has advised plaintiff MARY LONERGAN in previous years that if she attempts to use a sound truck, the NYPD will shut down the entire march.

28. On January 24, 2014, plaintiff JESSICA FOARD applied for a parade permit for the PLP's May Day march, to take place on April 26, 2014 (the nearest Saturday to May 1st) from 11:00am to 2:00pm.

29. Ms. FOARD also requested a permit for a sound truck, to allow plaintiffs to broadcast political songs and chants throughout the course of the march.

30. On January 24, 2014, Ms. FOARD met with Detective Scotto regarding her permit application. Detective Scotto informed her that the police could not under any circumstances issue a permit for a sound truck.

31. Without the use of a sound amplification device, plaintiffs have no way to audibly communicate their songs, chants, and other messages to participants in the march and spectators along the march route.

32. As of the date of this filing, no permit has been issued to plaintiffs.

33. Notwithstanding the provisions of New York City Administrative Code section 10-108, the NYPD has a *de facto* policy of allowing certain organizations and individuals, other than plaintiffs, the use of sound amplification devices on moving vehicles.

34. This *de facto* policy is illustrated by the following events that have taken place in New York City, each of which featured trucks or other vehicles broadcasting music and speeches through sound amplification devices while in transit, and each of which the NYPD has facilitated and permitted to proceed:

    a. The San Gennaro parade, which took place on September 14, 2013 in New York County;

    b. The Halloween parade, which took place on October 31, 2013 in New York County;

    c. The Gay Pride parade, which took place on June 30, 2013 in New York County;

    d. A sound truck advertising a "Unity Walk" was observed proceeding down Flatbush Avenue in Kings County on June 14, 2013 with police presence and acquiescence;

    e. In summer of 2013, a religious organization was observed conducting a parade with an NYPD escort on Flatbush Avenue in Kings County—on substantially the same route for which plaintiffs seek their permit—utilizing multiple sound trucks.

35. Upon information and belief, there are no official rules, policies, or guidelines directing the NYPD in exercising their discretion to allow certain organization, but not others, to violate the provisions of New York City Administrative Code section 10-108.

36. The New York City Administrative Code section 24-202 vests authority to enforce provisions related to the use of an amplified sound device on a vehicle to the NYPD. Thus, while the NYPD may not issue a permit for the use of a sound truck, it may selectively enforce the prohibitions set forth in section 24-233.

37. Furthermore, the Administrative Code's ban on the use of a sound truck has no reasonable basis in light of the permissibility of the use of sound signal devices "attached to, on or in a motor vehicle, wagon, or manually propelled cart from which food or any other items are sold or offered for sale when the vehicle is stopped, standing or parked." NYC Administrative Code §24-237(d).

38. In carving out this exception, New York City Administrative Code sections 24-233 and 24-237 draw distinctions between uses of amplified sound based on the content of the message being amplified, permitting only those messages designed to advertise the sale of consumer products.

39. New York City Administrative Code sections 10-108(g)(4), 24-233, and 24-237 are therefore unconstitutional under the First and Fourteenth Amendments, both on their face and as applied to plaintiffs.

## FIRST CAUSE OF ACTION

40. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

41. New York City Administrative Code section 10-108(g)(4) is unconstitutional under the First and Fourteenth Amendments, both on its face and as applied to plaintiffs. Administrative Code section 10-108 serves as a complete ban on the lawful use of amplified devices during marches, and is therefore not narrowly tailored to serve any government interest and leaves no alternative channels for communication. As the statute reserves discretionary enforcement to the NYPD, it is also unconstitutional as a prior restraint that lacks narrow, objective, and definite standards.

42. Plaintiffs are therefore entitled to a declaration that New York City Administrative Code section 10-108(g)(4) is unconstitutional.

## SECOND CAUSE OF ACTION

43. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

8

44. New York City Administrative Code sections 24-233 and 24-237 are unconstitutional under the First and Fourteenth Amendments, both on their face and as applied to plaintiffs. Administrative Code section 24-233 serves as a complete ban on the lawful use of amplified devices during marches, and is therefore not narrowly tailored to serve any government interest and leaves no alternative channels for communication. As the statute reserves discretionary enforcement to the NYPD, it is also unconstitutional as a prior restraint that lacks narrow, objective, and definite standards. Additionally, Section 24-237 serves as a content-based restriction with no reasonable basis as it allows the use of sound signal devices on motor vehicles selling food items.

45. Plaintiffs are therefore entitled to a declaration that New York City Administrative Code sections 24-233 and 24-237 are unconstitutional.

## THIRD CAUSE OF ACTION

46. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

47. New York City Administrative Code section 10-108(g)(4) deprives and threatens to deprive plaintiffs of their rights under the First and Fourteenth Amendments to the United States Constitution for the reasons described in the preceding paragraphs, and has caused irreparable harm and threatens to cause in the future, irreparable harm to the plaintiffs for which there is no adequate remedy at law.

48. Plaintiffs are therefore entitled to a preliminary injunction and permanent injunction, enjoining the NYPD from enforcing the provisions of New York City Administrative Code

section 10-108(g)(4), and enjoining the NYPD to issue a permit for moving sound to any person, including plaintiffs, who complies with the stated permitting requirements.

## JURY DEMAND

49. Plaintiffs demand a trial by jury in this action of all issues properly triable thereby.

WHEREFORE, plaintiffs pray for the following relief:

a. A judgment declaring that New York City Administrative Code section 10-108(g)(4) is unconstitutional on its face and as applied under the First and Fourteenth Amendments to the United States Constitution;

b. A judgment declaring that New York City Administrative Code section 24-233 is unconstitutional on its face and as applied under the First and Fourteenth Amendments to the United States Constitution;

c. A preliminary and permanent injunction enjoining defendants to issue a moving sound permit to plaintiffs, and to any other person who complies with the applicable statutory provisions;

d. The costs of this action including reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

e. Such other further and different relief as to this Court may seem just and proper.

Dated: New York, New York
March 24, 2014

Respectfully submitted,

By: /s/
Beena Ahmad
Rebecca Heinegg
*Attorneys for Plaintiffs*
48 Wall Street, 11th Floor
New York, New York 10005
T: (212) 227-2303
F: (212) 320-0230